# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 13, 2013 Session

## STATE OF TENNESSEE v. TINA B. CARROLL

**Appeal from the Circuit Court for Dyer County**
**No. 10CR245B     R. Lee Moore, Jr., Judge**

**No. W2013-00995-CCA-R3-CD  - Filed November 27, 2013**

Appellant, Tina B. Carroll, pleaded guilty to promotion of methamphetamine manufacture, a Class D felony, and received a two-year sentence, suspended to supervised probation.  A violation of probation warrant was subsequently filed, alleging that she had violated her probation by testing positive for narcotic drugs and marijuana.  Appellant now argues that one of the laboratory reports was admitted in violation of Tennessee Code Annotated section 40-35-311(c)(1) and that there is not substantial evidence to support the trial court's ruling.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Martin E. Dunn, Dyersburg, Tennessee, for the appellant, Tina B. Carroll.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

On August 9, 2010, a Dyer County grand jury indicted appellant for promotion of methamphetamine manufacture.  She pleaded guilty to the indicted offense and received a sentence of two years in the Tennessee Department of Correction, suspended to supervised

probation. On June 18, 2012, the Tennessee Board of Probation and Parole filed a probation violation report, alleging that appellant violated probation condition eight, which prohibited the use of intoxicants, narcotic drugs, and marijuana and required appellant to submit to random drug screens. According to the report, appellant submitted a urine sample on May 1, 2012, that tested positive for marijuana, amphetamine/methamphetamine, and methadone/methadone metabolite. The court issued a probation violation warrant based on the June 18, 2012 report. On February 2, 2013, the Tennessee Board of Probation and Parole filed a follow-up report alleging that appellant again violated probation condition eight by testing positive on January 9, 2013, for amphetamine/methamphetamine and methadone/methadone metabolite.[1] The trial court held a probation revocation hearing on March 11, 2013.

Probation officer Amanda Baggett testified that she had been appellant's probation officer but that another officer had taken over appellant's supervision. Appellant was under her supervision on May 1, 2012, and on that date, Ms. Baggett obtained a urine sample from appellant that she sent to the AEGIS laboratory for a drug screen. The drug screen was positive for marijuana, amphetamine/methamphetamine, and methadone/methadone metabolite. The laboratory report from AEGIS was admitted as an exhibit.

On cross-examination, Ms. Baggett testified that to her knowledge, appellant had not been charged with any additional crimes. She further testified that appellant had paid her court costs and fines and had been working. According to Ms. Baggett, the probation violation *sub judice* was appellant's first violation. Ms. Baggett agreed that appellant had been living at the same address the entire time she was under Ms. Baggett's supervision and that appellant had completed an alcohol and drug assessment. The assessment indicated that appellant was "not a risk at that time" and that no recommendations were made. Ms. Baggett testified that she performed a field screen on the sample later submitted to the laboratory, and the field screen was positive for marijuana, cocaine, and amphetamines.

Responding to a question from the court, Ms. Baggett testified that after appellant's positive drug screen, she talked with appellant about seeking treatment at Pathways for drug rehabilitation, among other issues. Appellant appeared interested in pursuing treatment, but to Ms. Baggett's knowledge, she did not follow through.

---

[1] The warrant was not amended to reflect the new allegation, and no new warrant was issued. Nonetheless, appellant has not complained that she did not have notice of the new allegation or that her right to due process was violated in any fashion. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)) (setting forth the minimum due process requirements for probation revocation proceedings). Therefore, we conclude that she has waived any such argument. In addition, our conclusion that the trial court properly revoked appellant's probation based on the first laboratory report renders moot any argument regarding the failure to issue an amended warrant.

Probation officer Chris Thomas testified that he began supervising appellant's probation on September 1, 2012. With the assistance of female probation officer, Glenda Hubbard, Mr. Thomas obtained a urine sample from appellant on January 9, 2013, and submitted it to the Medtox laboratory for testing. The Medtox report indicated that the sample was positive for methamphetamine, amphetamine, and methadone. Mr. Thomas had attached the Medtox report to his probation violation report, which was already in the record.

On cross-examination, Mr. Thomas testified that he performed a field test on the sample before sending it to the laboratory. The field test showed that the sample was positive for PCP and methamphetamine. Mr. Thomas agreed that appellant had been working and had lived at the same address while under his supervision.

The State moved to make the Medtox report an exhibit, and appellant objected that the accompanying affidavit did not meet the requirements of Tennessee Code Annotated section 40-35-311(c). The trial court overruled appellant's objection and admitted the Medtox report and its accompanying affidavit into evidence. Following this decision, the State rested its case.

On her own behalf, appellant testified that she had been living at the same address since 2005. She had worked at the same place since May 19, 2012. She and Gary Carroll had been married since 2001. When asked whether she had used any drugs since her guilty plea hearing in June 2011, appellant stated that she had used marijuana in May and had not used any other drugs.

On cross-examination, appellant said that since her guilty plea, she had not been around people using methamphetamine nor been present when methamphetamine was manufactured. On re-direct examination, appellant testified that she had begun treatment at Pathways on February 20, 2013,[2] for depression.

Gary Carroll testified that he saw appellant use marijuana once at the beginning of her probation as a "last hoorah." He said that appellant had been trying to stay out of trouble while on probation and had stopped associating with certain people. On cross-examination, Mr. Carroll said that he had seen methamphetamine on television and that he had never seen appellant taking anything with which he was unfamiliar.

Following the close of proof and closing arguments, the trial court revoked appellant's probation and ordered her to serve the balance of her sentence in the Tennessee Department

---

[2] Appellant did not explicitly testify that her treatment began in 2013, but the date is clear from the context.

of Correction. In its ruling, the trial court relied on the two positive drug screens and appellant's denial that she had a substance abuse problem.

## II. Analysis

### A. Admissibility of the Medtox Report

For her first issue, appellant argues that the trial court improperly accepted the Medtox report into evidence when it did not meet the requirements of Tennessee Code Annotated section 40-35-311(c). The State agrees with appellant, and we concur.

Under Tennessee Code Annotated section 40-35-311(c), a laboratory report regarding a defendant's drug screen may be admitted into evidence at a probation violation hearing without the testimony of the laboratory technician if the report is accompanied by an affidavit that includes the following information:

(A) The identity of the certifying technician;

(B) A statement of qualifications from the certifying technician;

(C) A specific description of the testing methodology;

(D) A statement that the method of testing was the most accurate test for this particular drug;

(E) A certification that the test results were reliable and accurate;

(F) A declaration that all established procedures and protocols were followed; and

(G) A statement of acknowledgment that submission of false information in the affidavit may subject the affiant to prosecution for the criminal offense of perjury pursuant to § 39-16-702.

Tenn. Code Ann. § 40-35-311(c). In this case, the affidavit lacks a statement that the method of testing was the most accurate test for each particular drug, a certification that the test results were reliable and accurate, and a statement that the affidavit was made under penalty of perjury. In addition, the affidavit is also arguably lacking a statement of qualifications from the certifying technician. Therefore, the affidavit did not meet the qualifications of

Code section 40-35-311(c), and the Medtox report should not have been admitted into evidence.

## B. Probation Revocation

Appellant contends that the trial court abused its discretion in revoking appellant's probation. She alleges that the field tests conducted by the probation officers undermined the credibility of the laboratory reports and that the testimony at trial suggested that appellant did not use methamphetamine or methadone. The State responds that there is substantial evidence to support the trial court's decision. We agree with the State.

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of sentence. Tenn. Code Ann. § 40-35-311(e)(1) (2010 & Supp. 2012). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). In the context of probation revocation, to prove that the trial court abused its discretion, the appellant "must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

In this case, the trial court relied on the two laboratory reports showing that appellant tested positive for illegal drugs, which violated condition eight of the terms of her probation. While the Medtox report should not have been admitted into evidence, the AEGIS report alone was substantial evidence to support the trial court's revocation. Appellant's only challenge to the AEGIS report is that the field test performed by the probation officer revealed somewhat different results, which impinged on the credibility of the AEGIS report. However, the trial court rejected appellant's credibility argument at the hearing, and there is nothing in the record to support a conclusion that the field test was of such a nature as to impeach the AEGIS report, which the technician had sworn to be reliable and accurate.

The terms of appellant's probation prohibited the use of illegal drugs, and the admissible laboratory report clearly shows that appellant had used illegal drugs during her probationary period. We note that appellant also admitted to using marijuana after her probation period had begun. However, appellant denied using methamphetamine while on probation, and she argues that the testimony elicited at trial did not portray her as a person who uses methamphetamine. Nonetheless, the laboratory report contradicts her assertion. We conclude that the trial court did not abuse its discretion in revoking appellant's probation when she tested positive for marijuana, amphetamine/methamphetamine, and methadone/methadone metabolites in violation of the conditions of her probation.

## CONCLUSION

Based on the record, the arguments of the parties, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE